# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET,
## MARCH TERM 1831, AT BOSTON.

PRESENT.

Hon LEMUEL SHAW, Chief Justice,
Hon SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

---

## The City of Boston *versus* Amos Binney

Assumpsit for use and occupation will lie only where there is a contract, express or implied; and the implication of a contract arising from the defendant's having been in the occupation of land owned by the plaintiff, may be rebutted by evidence that the defendant claimed to hold under an adverse title.

If a tenant at will or sufferance renounces the title of his landlord, assumpsit cannot be maintained for the occupation subsequent to the renunciation.

Where the defendant bound himself under a penalty, to convey land to the plaintiffs at such sum as arbitrators should award, and deposited a deed with the arbitrators to be delivered to the plaintiffs on the publishing of the award, and agreed to become tenant to the plaintiffs until August 1, at such rent as the arbitrators should award, and the arbitrators made an award and delivered the deed to the plaintiffs, who thereupon tendered the purchase money to the defendant, but the defendant refused to abide by the award, and tendered the penalty of his bond, and about the first of August consented that the tenants then in possession should remain, upon condition of their paying him the rent as they had theretofore done, it was *held*, that there was no implied contract on the part of the defendant to pay the plaintiffs for the use and occupation of the land after the first of August.

*Held* also, that in an action of assumpsit by the plaintiffs against the defendants for such use and occupation, the title to the land, which was claimed by both parties, could not be tried

Boston
v.
Binney.

ASSUMPSIT for the use and occupation of a parcel of land in Boston, from August 1, 1824, to May 5, 1825.

On the trial, before *Wilde* J.. it was proved, that on February 25, 1824, the defendant, being the owner of the land, entered into an agreement with the plaintiffs, in which it is stated that the plaintiffs are disposed to purchase, and the defendant is disposed to sell the land for a fair compensation in money, and by which arbitrators therein named are authorized to award what sum of money the plaintiffs shall pay to the defendant for all his estate in the land ; and it is recited, that the more effectually to carry the agreement into effect, the defendant has executed a deed of conveyance of the land to the plaintiffs, to be delivered with the award to the plaintiffs, and that for that purpose he has deposited the deed with the arbitrators ; and the plaintiffs covenant to pay the defendant the sum which shall be awarded, within thirty days after the award shall be made and published ; and it is agreed, that the buildings on the land shall belong to the defendant, and that they shall be removed by him by the 1st of August then next ; and that the arbitrators may award what rent shall be paid by him for occupying the land until the buildings shall be removed ; and for the faithful performance of the award the parties bind themselves each to the other in the penal sum of $10,000.

Annexed to the submission is a writing of the same date not under seal, but signed by the defendant and Josiah Quincy, (who was then mayor of Boston,) as follows : — "It is agreed by the parties to the annexed instrument, that posses sion shall be given on the payment of the money awarded, and that Amos Binney shall become tenant to the city, after the delivery of the deed by the referees, and that the referees shall award what sum he shall pay for the use of said land, as tenant of the city, during the term he may hold the same afterwards, until the removal of the buildings, which shall not be delayed beyond the first day of August next."

On May 21, 1824, the arbitrators made and published their award, and delivered it to the plaintiffs, together with the defendant's deed. The arbitrators awarded, that the plaintiffs should pay to the defendant $9000 for the land, and that, for

the occupation of the land until the buildings should be removed, the defendant should pay the plaintiffs $ 50, computing from the date of the award to the 1st of August following; and that he should also pay the plaintiffs $ 49·42, this sum having been paid by them on account of his share of the expenses of the arbitration. On the same day the plaintiffs tendered to the defendant the sum of $ 8909·58, being the amount due according to the award, but which the defendant refused to accept. On the 27th of July following, the defendant made a tender to the plaintiffs of $ 10,000, accompanied by a letter, in which he says, that, after many applications, he on the 17th of that month obtained, for the first time, a duplicate of the award; that the sum awarded to him is an inadequate compensation for his land, and that he has determined to pay the penalty of the bond of submission; and he demands that his deed may be redelivered to him, according to the understanding when he entered into the bond, in order that he may avail himself of his property according to his just rights.

At the time of the submission, the land and a ropewalk thereon were in the occupation of Chapman &·Wainwright, as tenants at will of the defendant, at the rent of $ 1100 per annum; and in June 1824 these tenants made a written application to the city government for leave to continue their occupation for six months after the 1st of August, 1824; which request was refused, as appears by a vote of the city council, no answer, however, being otherwise returned to the tenants; and on or about the 1st of August, a verbal application for permission to remain was made by them to the mayor, who gave them to understand that the city would make no difficulty about their remaining, if the defendant, who owned the buildings, would consent, they paying to the city rent for the land equal to the interest on $ 9000. About the same time, upon application by the tenants to the defendant, he consented to their remaining, upon condition of their paying him the same rent which they theretofore had paid, and also agreed to save them harmless from all claims for rent which should be made by the plaintiffs. On the ensuing 1st of January, the tenants accordingly paid the defendant the full rent then due, and took from him a receipt, in which he agreed to hold them harmless

as above mentioned. They remained in the occupation of the premises until May 5, 1825, when they left them ; and the defendant soon after removed the buildings. In July following, Chapman & Wainwright paid to the plaintiffs $ 525·19, for rent from August 1, 1824, to May 5, 1825, the plaintiffs having in the mean time agreed to save them harmless from all claims of the defendant. The defendant afterwards sued them for the rent from January 1, 1825, to May 5, and recovered judgment in this Court for $ 383·49 principal, and the interest then due, which has been reimbursed to them by the city in pursuance of their warranty against the defendant's claims.

Some stones and bricks belonging to the defendant remained on the land until about the 13th of May, when he removed a part of them ; leaving the residue, which he supposed not worth taking away ; and the city have deposited there, from time to time, street-dirt and other materials, the land still remaining uninclosed and otherwise unoccupied.

A verdict was taken for the plaintiffs, subject to the opinion of the whole Court.

*Edward G. Loring*, for the defendant. The action is founded on a contract ; the facts stated negative a contract.

The plaintiffs produced a deed and claim title, and show our occupancy. The legality of the plaintiffs' title is not in issue in this action ; they cannot prevail on it, because we cannot disprove it. They allege a contract, and must prove one. The occupation by the defendant of the plaintiffs' land, creates only a presumption of a contract, which may be and is rebutted by the proof that the possession was adverse. *Vandenheuvel* v. *Storrs*, 3 Connect. R. 203 ; *Pott* v. *Lesher*, 1 Yeates, 576.

Admitting the legal title to be in the plaintiffs, the defendant was a disseisor. He was in exclusive possession, claiming title and denying the plaintiffs' right. *Kennebec Purchase* v. *Springer*, 4 Mass. R. 416 ; *Proprietors of No. Six* v. *M'Farland*, 12 Mass. R. 325 ; *Commonwealth* v. *Dudley*, 10 Mass. R. 403. Our lease to Chapman & Wainwright was a disseisin ; *Warren* v. *Child*, 11 Mass. R. 222 ; therefore there is neither privity of estate nor of contract

between the parties; there is nothing to found the prom-
ise on.

The plaintiffs do not prove a title in themselves, for they do
not show a delivery of the defendant's deed with his assent.
Besides, if the deed was duly delivered, it vested in the plain-
tiffs only a legal seisin, which cannot be good against an ac
tual adverse possession. If so, then the plaintiffs never had a
possession by which they could convey or lease the premises,
or make the contract they set forth.

Admitting the plaintiffs' title to be valid, they prove an oc-
cupation and possession of the lands by their own tenants,
Chapman & Wainwright, from whom they have received their
rent.

The title to the land is in dispute between the parties, and
it cannot be tried in an action of assumpsit for use and occu-
pation, in which the true defence cannot be shown. *Binney
v. Chapman,* 5 Pick. 124; *Codman v. Jenkins,* 14 Mass. R.
96; *Wyman v. Hook,* 2 Greenl. 337.

*Curtis* (City Solicitor), for the plaintiffs, stated, that this
action was brought by the express direction of the city coun-
cil. He contended that by the submission the defendant ex-
pressly agreed to become tenant to the plaintiffs, and that he
could not deny the title of his landlords.

By the delivery and recording of the defendant's deed, the
plaintiffs became seised and possessed of the land, those acts
being equivalent to livery of seisin. *Goodwin v. Hubbard,*
15 Mass. R. 214; *Brimmer v. Long Wharf,* 5 Pick. 135.
The deed was delivered according to the intention of the de-
fendant. He could not, after the award, elect to deliver the
deed or pay the penalty of the bond; a court of equity would
have compelled a conveyance. *Jones v. Boston Mill Corpo-
ration,* 4 Pick. 507.

The holding over of a tenant for term of years, is not a dis-
seisin, and if the defendant intended to disseise the plaintiffs,
he should have made a deed, with livery of seisin. Com. Dig.
*Seisin, F* 2; *Doe v. Perkins,* 3 M. & S. 271; *Jackson. v.
Raymond,* 1 Johns. Cas. 85, note; Co. Lit. 57 *b; Brewer v.
Knapp,* 1 Pick. 332; Stearns on Real Actions, 7, 8; *Smith
v. Burtis,* 6 Johns. R. 216; *Taylor v. Horde,* 1 Burr. 108-

1. *

Boston
*v.*
Binney.

But if there was a disseisin, the subsequent possession by the plaintiffs under their title gives them a right to an action of trespass for the mesne profits , Stearns on Real Actions, 410 ; and having such right, they may waive the tort and maintain assumpsit. No question of title is now in litigation. *Cummings* v. *Noyes*, 10 Mass. R. 433 ; *Wright* v. *Birch*, 1 T. R. 378 ; 3 Stark. Ev. 1514, 1515, 1516.

*C. G. Loring*, in replying, said that the supplementary agreement was signed by Quincy in his private capacity, but that at most it was only an agreement on the part of the defendant to become tenant to the plaintiffs in case a conveyance should be made ; that no valid conveyance had been made, and so the defendant never became tenant to the plaintiffs, and consequently there could be no holding over ; that the plaintiffs had never had possession of the land ; that if the deed was valid, the supplementary agreement could not extend beyond the 1st of August, 1824, and on that day the defendant forbade Chapman & Wainwright to attorn to the plaintiffs ; and that, although the holding over by a tenant may not be in itself a disseisin, yet that, by making the lease and giving the lessees a guaranty against the claims of the plaintiffs, the defendant was a disseisor, and so there was no contract for use and occupation.

*March 14th,*
1831.

PUTNAM J. delivered the opinion of the Court. The claim of the plaintiffs is grounded on the assumed fact, that the defendant was by the agreement of submission a tenant of the plaintiffs from the 21st of May (when the award was delivered) to the 1st of August, 1824, (by which time he agreed to remove his buildings,) and that he held over by sufferance, and so is not to be permitted to question the title of his landlord. Two answers to the plaintiffs' claim are suggested by the defendant : — in the first place, that there was in fact no holding at all by him as a tenant to the plaintiffs, in virtue of that agreement ; and secondly, if there were, that it ceased, according to its own limitation, before the commencement of the occupation for which this action was brought, and that the defendant expressly denied the plaintiffs' title during the whole time. So that there was no holding over at the plaintiffs' sufferance.

Whether the defendant did in fact become tenant from the time when the arbitrators delivered their award to the 1st of August, 1824, when he was to remove his buildings, depends upon the true construction of the agreement.   It is not an agreement to become tenant at all events, but upon conditions arising by necessary implication, namely, provided the arbitrators should make a legal award, and provided also that the defendant accepted it and conformed to its provisions.   If no legal award should be made, or if the plaintiffs should elect to pay damages for the non-performance, in either event, the defendant was not to become tenant at all, but was to be re stored to his estate.

On the 21st of May, 1824, when the award was delivered, and the plaintiffs tendered the sum of $ 8909·58, which was to be paid by the city to the defendant, he refused to abide by it.   He considered it so erroneous as to render it proper for him to pay more money to be placed *in statu quo*, than the plaintiffs were awarded to pay for the whole property ; and, in ten days after he obtained a duplicate of the award, he actually tendered the penalty of $ 10,000, and claimed to be restored to his estate.   Sufficient notice of the defendant's refusal to abide by the award, was given to the plaintiffs.   Now the plaintiffs, perhaps, may have a good cause of action for the defendant's not performing the award, for his not becoming tenant, and paying $ 50 rent from May to the 1st of August ; but how his refusal is to be construed into an acquiescence, how his utter denial of the plaintiffs' right to become his landlords under that agreement, should operate as an acknowledgment of his being in fact their tenant, is very difficult to be perceived.   The most that can be made of it is, that the defendant entered into a contract to become tenant to the plaintiffs at a future day, for a limited time, and that he would not become tenant as he had agreed to do.   Under those circumstances, it might be said that he had broken his agreement, but not that he became a tenant under it.   The contract was executory, but never executed.   The relation of landlord and tenant, therefore, was not created in fact ; so there could not be any holding over at sufferance.

But if that relation existed, it expired on the 1st of August,

8

Boston
v.
Binney.

1824, before the commencement of the occupation for which this action was brought ; and the defendant renounced and denied the plaintiffs' title during the whole time of the occupation now in controversy.   The agreement and award extended only to August 1, 1824.   The defendant was then to remove his buildings, and to pay $ 50 for the rent from the time of the delivery of the award and deed, until the 1st of August. It cannot be maintained, that the arbitrators intended that their award should extend or relate to rent after that day.   In the first place, the parties had given them no authority to make it so extend ; in the second, they explain their words " for the occupation of the premises until the buildings shall be removed," by referring " to the first day of August then next " as the time for which the defendant was to pay the $ 50.   There never was any submission or agreement touching the occupation after that day, and that is the subject-matter of this action. Three days before it was commenced, the defendant formally, in writing, " renounced the plaintiffs' title, divested himself of the possession obtained under the plaintiffs, and commenced a fresh holding " under his own alleged better title.   *Bulls* v. *Westwood*, 2 Campb. 11.   There was nothing in this conduct which can warrant the inference of holding over at sufferance, even if there had been a prior holding as tenant for a certain time.

Suppose that there had been a written lease by the plaintiffs to the defendant from May 21 to August 1, and just before its expiration the defendant, for good cause, or without any legal cause, had renounced that title, and given notice of his intent to commence upon another title after the lease should expire.   Such renunciation would have rebutted any right of the plaintiffs to claim to hold the defendant accountable as a tenant at sufferance.   It was not the mere naked, unexplained holding over of a tenant, of which we read in the books.   1 Roll. Abr. 659 ; Co. Lit. 57.   All that the law requ res is, that, during the time when the tenant actually holds by the permission of his landlord, the landlord's title shall not be disputed.   But when he ceases to hold in that relation, he may commence upon an adverse title, after the expiration of the lease.   Now the inference to be derived from the agreement

to become tenant from May to August, cannot be more unfavorable for the defendant's commencing upon another title after the 1st of August, than the lease for that time would be.

It was said, however, that the plaintiffs were seised in virtue of the deed. That, however, would depend upon its having been delivered with the assent of the defendant, under all the circumstances of the case ; and the decision of that question would open the whole ground of controversy. But suppose it were so, and that, upon a trial of the merits, the defendant would fail in the claim which he has set up, the result would be, not that he has been a tenant of the plaintiffs during the time he has occupied after August 1, 1824, but a disseisor of the plaintiffs. And an ample remedy is provided ; he would be accountable in trespass for the mesne profits, after the plaintiffs should have proved their title in a writ of entry or other proper action. During all that time the defendant was in possession, claiming the fee, taking the rents as his own, and denying the title of the plaintiffs. If the city had conveyed by deed to a stranger, is it not clear, that, in consequence of that disseisin, nothing would have passed ? " If, (says Lord *Mansfield*, in *Fishar* v. *Prosser*, Cowp. 218,) upon a demand made by the co-tenant of his moiety, the other denies to pay, and denies his title, saying he claims the whole, and will not pay, and continues in possession, such possession is adverse and is ouster enough."

It is said that a party injured may waive the tort and maintain assumpsit. But the defendant has a right to say to the plaintiffs, "there has been no tort; you have nothing to waive ; the land is mine, not yours." And whether it belongs to one or the other, we could not try in an action of assumpsit for use and occupation. So we said expressly in *Codman* v. *Jenkins*, 14 Mass. R. 96.* " *Indebitatus assumpsit* for rent

---

* See also *Bigelow* v. *Jones*, 10 Pick. 161. [See *Mayo* v. *Shattuck*, 14 Pick. 525 ; *Henwood* v. *Cheeseman*, 3 Serg. & Rawle, 500 ; *Anon.* Woodf. on Landl. & Ten. 540 ; *Alton* v. *Pickering*, 9 N. Hampsh. R. 494 ; *Lewis* v *Robinson*, 10 Watts R. 338 ; *Mather* v. *Trinity Church*, 3 Serg. & R. 509 ; *Baker* v. *Howell*, 6 Serg. & R. 476 ; *Brown* v. *Caldwell*, 10 Serg. & R. 114 ; *Irvaine* v. *Hanlin*, 10 Serg. & R. 220 , *Snyder* v. *Vaux*, 2 Rawle, 423 ; *Powell* v. *Smith*. 2 Watts R. 126.]

will not lie in favor of a stranger, for the purpose of trying his title ; *or by one of two litigating parties claiming the land :* this action not depending upon the validity of the plaintiff's title, but on a contract express or implied." There has been nothing but litigation between these parties, in one form or another, since the publication of the award. The very subject matter of this suit was litigated in the action of *Binney v. Chapman*, 5 Pick. 124, in which the defendants were supported and indemnified by the city in their unsuccessful defence. The land has been claimed by the city and claimed by Binney, from that time to the present. But the title is not to be tried in this action of assumpsit for use and occupation. It would be directly contrary to the established principle for the tenant to controvert the title of his landlord. The plaintiffs' ground is, that the defendant was their tenant, and holds over by their sufferance. If that were so, it would be clear that the defendant could not be permitted to deny the title. But the defendant's mouth is not to be shut, because he once was tenant, if he renounced before the commencement of the alleged time of holding over at sufferance. It has been contended for the plaintiffs, that they became seised in virtue of the deed which the defendant delivered to the arbitrators, and they to the plaintiffs, and that that should be held conclusive in this action, as the defendant has not shown any thing to defeat it. But if the defendant is to be treated as the plaintiffs' tenant, how can he be permitted to show any thing adverse to their apparent title ? Suppose that a stranger had a better title than that which the defendant had when he gave the deed, and that after the expiration of the lease and before holding at sufferance, the defendant had acquired the better title by purchase or descent, shall he never have an opportunity to try it ? Shall he be for ever precluded, because he once held as tenant, though he renounced that relation before the acquisition of the better title ? If it be said that the defendant may show a better title in this action of assumpsit for rent, then what becomes of the rule that he cannot controvert the title ? That rule is too firmly settled to be questioned or shaken. It comes, then, to this point, that where there is no contract, express or implied,

no action for use and occupation can be maintained. That
being the case at bar, the plaintiffs should be nonsuited.[1]

## SAMUEL R. MILLER *versus* THOMAS LORD.          11

By articles of copartnership between M. and L., the profits were to be divided in
certain proportions, and it was agreed that M. might draw from the stock $ 2500,
and L. $ 300, annually, but nothing was said about interest on the sums so to be
withdrawn. After the dissolution of the copartnership and a division of the goods
on hand, it was agreed, in order to make a final settlement, that M. should esti-
mate the profits of the business, and that L. should elect either to buy M.'s inter-
est in the concern or sell his own interest to M., according to such estimate ;
that the partner buying out should receive all the advantages to accrue from the
notes and accounts held by the firm, and should pay all debts due from the firm ;
and that the sum due from the partner selling out, on his private account with
the firm, should be deducted from the proportion of the profits to be paid to him ;
and a memorandum made of matters in dispute, was to be submitted to arbitra-
tion, if the parties should not agree in regard to them. It was *held*, that this
agreement was not void for uncertainty in not determining whether the estimated
profits were to include interest on the sums withdrawn as above stated, nor for
uncertainty in regard to the items contained in the memorandum, these items
being expressly excluded from the operation of the agreement.

A controversy between a copartnership and one of the partners, in regard to such
partner's private account with the firm, is within the equity jurisdiction conferred
on this Court by *St.* 1823, *c.* 140, " in disputes between co-partners, in cases
where there is no adequate remedy at law."[1]

In all cases where an account is to be stated between partners, this Court has equi-
ty jurisdiction under that statute.

The agreement above stated was held not to oust this Court of its equity jurisdic
tion in a dispute between the partners, for what items were to be included in
M.'s private account, and what in the profits, was to be determined, and for these
purposes an account must be stated.

In general, where articles of copartnership permit the partners to withdraw certain
sums annually, without containing any stipulation in regard to interest thereon,
interest will not be allowed.

If the parties to an agreement understand it differently at the time of entering into
it, but neither party makes known his construction to the other until after the
agreement is concluded, they will, in a court of equity, be bound by the terms
of the agreement, and these terms will be construed by the court.

In a bill in equity between partners, a prayer that the defendant may be held to
render an account of all moneys and effects of the firm received by him, and of

---

[1] See *Mayo* v. *Shattuck*, 14 Pick. 525; *Allen* v. *Thayer*, 17 Mass. R. 301 ;
*Patch* v. *Loring*, 17 Pick. 336; *Cheney* v. *Batten*, Cowp. 243; *Wiggin* v. *Wig-
gin*, 6 N. Hampsh. R. 298; *Cripps* v. *Blank*, 9 Dowl. & Ryl. 480 ; *Alton* v.
*Pickering*, 9 N. Hampsh. R. 494 ; *Johnson* v. *Beauchamp*, 9 Dana (Kentucky)
R. 124; *Stockett* v. *Watkins*, 2 Gill & Johns. 326

[1] See Revised Stat. *c.* 81, § 8